**TIMOTHY J. McILWAIN,**

**ATTORNEY AT LAW, LLC**

89 River Street #1538
Hoboken, New Jersey 07030
Tel:  (877) 375-9599
Fax:  (609) 450-7017
www.McIlwainLaw.com

ATTORNEY FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| SHANNON PEDERSEN, JACLYN JANICKY and EMILY CRISTALDI, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) Civil Action No. |
| *Plaintiffs,* | ) ) ) **CLASS ACTION COMPLAINT** |
| Vs. | ) ) ) **DEMAND FOR JURY TRIAL** |
| NATIONAL COLLEGIATE ATHLETICS ASSOCIATION, and JOHN DOES 1 through 1500, inclusive, | ) ) ) ) ) |
| *Defendant(s).* | ) ) ) ) ) |

Plaintiffs, SHANNON PEDERSEN, JACLYN JANICKY and EMILY

CRISTALDI by and through their attorneys, based on their

individual experiences, the investigation of counsel, and

upon information and belief alleges as follows:

## INTRODUCTION

1. Plaintiff and the class seek to represent athletes that had been removed from the Dorsey Scholarship program because of the conduct of Defendant Kean University and Defendant National Collegiate Athletics Association hereinafter (NCAA).

2. NCAA has received benefits from controlling the conduct of colleges and universities, who agree to join their membership such as Defendant Kean University.

3. Plaintiff is an intended third party beneficiary of the agreement between Kean University (aka membership school) and Defendant NCAA.

4. Plaintiff can prevail against Defendant NCAA under Promissory Estoppel, Interference with Prospective Contract Advantage, 42 U.S.C. §§ 1983 and 1985, and violation of the New Jersey Law Against Discrimination, New Jersey Civil Rights Act and the public policy of the State of New Jersey for its conduct that provided Plaintiff no opportunity to be heard or options to remedy the harm caused.

5. Through defendant's course of action, plaintiff and the class were entitled to no hearing or due process

rights in violation of Article I of the New Jersey State Constitution and she will continue to sustain damages in an amount to be proven at trial.

6. Plaintiff and the class were entitled to no representation when Kean University was investigated and eventually sanctioned for conduct committed exclusively by Kean.

7. Accordingly, Plaintiff brings a suit to stop defendants from continuing the tortuous conduct of National Collegiate Athletics Association's discriminatory policies and procedures and to recover damages including but not limited to monetary losses defendants have caused to plaintiff and other class members.

**PARTIES**

8. Plaintiff Shannon Pedersen, an individual, is a New Jersey resident and the current center back for Kean University women's soccer team.

9. Plaintiff Jaclyn Janicky, a former midfielder for the Kean University women's soccer team, is a citizen of the State of New Jersey.

10.    Plaintiff Emily Cristaldi, an individual, is a former shooting guard for the Kean University women's

basketball team, now residing in the State of North
Carolina.

11.     Defendant National Collegiate Athletics
Association ("NCAA") is an unincorporated association
that acts as the governing body of college sports and
has over 1,200 member institutions, conferences,
organizations, and individuals that administers the
athletic programs of its member colleges and
universities, including the enforcement of guidelines
for the recruitment of high school athletes into
participating college athletic programs.  The NCAA's
bylaws and policies are discriminatory and have a
substantial adverse impact on female student-athletes
who participated in NCAA Division II and III sports.
The NCAA's headquarters are in Indianapolis, Indiana.

12.     At all relevant times herein Defendant John Does
1-1500 inclusive, were fictitious names for
individuals, partnerships, joint ventures,
corporations, limited liability corporations or other
forms of legal entity, the identities of which are
unknown at the present but who are liable to the
plaintiffs by reason of their participation in the
acts referred to herein or who aided and abetted the
creation and maintenance of a discriminatory

environment for plaintiffs because of their race or gender classification as applied, or who authorized, ratified, condoned, acquiesced in or were willfully indifferent to the discriminatory conduct mentioned herein.

### JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the case arises under the Constitution and laws of the United States.

Further, this Court has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(3), in that the action seeks redress for acts that deprive the plaintiff, under color of state law, of rights guaranteed to her by the Constitution of the United States, pursuant to 42 U.S.C. § 1983, 1985 and 1988.

Finally, this Court additionally has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that the action includes state law claims that are part of the same case or controversy as the federal claims.

Venue is proper in this Court under 28 U.S.C. § 1391(b), in that all of the events giving rise to plaintiff's claims occurred in the Northern District of New Jersey.

## COMMON FACTS ASSOCIATED WITH ALL ALLEGATIONS

13.    On September 30, 2011, eleven (11) student athletes at Kean University were prevented from participating in athletics by the Kean University Athletic Director Chris Morgan and Dawood Farahi, the president of the university and/or lose the scholarship money awarded to them.

14.    Plaintiff and her class members were faced with a choice after they detrimentally relied on the Defendant and attended Kean University.

15.    Kean University with no hearing, no written explanation had unilaterally decided to prevent student athletes from participation in their sport because of their entitlement to a Dorsey scholarship, which apparently has exceeded the amount of participants allowable by the National

6

Collegiate Athletic Association (NCAA), a

regulatory body of college athletics.

16.   Plaintiff Janicky forfeited her scholarship in

order to continue playing student athletics.

17.   Defendant NCAA had sent a notice of violation

on September 28, 2011 due to off-season activity

that related to participation in athletics

overseas not specifically the Dorsey scholarship

situation that had caused the suspension to the 11

student athletes' referenced above.

18.   Defendant NCAA indicated that they would be

making a decision as to how to handle the matter

in 90 days.

19.   One day after the notice of allegation, Kean

University, through its agents, Chris Morgan

(athletic director) and Dawood Farahi (president

of the university) reacted without the best

interest of the student athletes' or in a prudent

matter that allowed for fundamental fairness.

20.   Glenn Hedden was Kean University's former

Athletic Director and he also served as the

compliance officer of the National Collegiate

Athletic Association (NCAA) rules and regulations, among other duties.

21.    Prior to 2011, upon information and belief, Glenn Hedden was notified by the NCAA that Kean was giving too many Dorsey Scholarships to athletes over the percentage allowable by the rules.  Essentially, the Dorsey Scholarship provides for up to $12,000 per semester per student and 9 of the 11 Scholarships were awarded to female athletes as of 2011.  Essentially, the Dorsey Scholarship pays the student athletes tuition.

22.    Despite being warned by Defendant NCAA and instead of simply just characterizing the Dorsey Scholarship as an academic scholarship rather than making an extra-curricular activity a factor, Glenn Hedden continued to violate the NCAA rules by allowing for a disproportionate number of the Dorsey Scholarships to go to athletes.

23.    Upon information and belief, Glenn Hedden mistakenly believed that the Dorsey Scholarship was for minorities and not academically based.

Apparently, the Dorsey Scholarship had been changed years ago by Kean, but Glenn Hedden did not inform himself of the changes even though this was part of his job duties.

24.    Despite Glenn Hedden's mismanagement and/or cover-up, Kean continued to retain Glenn Hedden as Athletic Director since 1998.

25.    On or around November 2010, upon information and belief, Glenn Hedden began supplying the NCAA information to entice an investigation into Plaintiff and members of the class rather than correct Defendant Kean's conduct and overall compliance with the NCAA rules.

26.    Despite being warned by the NCAA of the improper financial aid offers to athletes, Kean would conceal from the incoming student athletes this fact as well as that if there was an investigation Kean would take away their scholarship or remove them from their respective sports team without a hearing and before any NCAA investigation was completed.

27.   On or around May 2011, Kean University
      terminated Glenn Hedden.

28.   On June 13, 2011, a month later, a disgruntled
      Glenn Hedden filed a lawsuit against Kean and
      continued to provide the NCAA information directly
      related to Glenn Hedden's negligence over the
      years such as improper financial aid offers to
      student athletes.

29.   From June 13, 2011 to September 2011, Kean
      knew that an NCAA investigation was imminent and
      that Kean would take a draconian approach by
      removing players from teams and/or stripping them
      of their scholarship money before the NCAA
      investigation was complete.

30.   Kean University intentionally concealed from
      their student athletes how they would handle an
      NCAA investigation and maliciously withheld this
      information until the opportunity to transfer or
      obtain other financial aid was impossible.

31.   Christopher Morgan was appointed athletic
      director September 1, 2011 and knew of the

violations that were being investigated prior to the school year starting.

32.    Athletic Director Morgan withheld this information from the student athletes, which prevented them from being able to remedy their situation and play college sports for another university or college.

33.    Upon information and belief, Plaintiff and many members of her class were offered scholarships from other competing colleges, which would allow them to play their respective sport while receiving financial assistance.

34.    Kean University allowed plaintiffs and their class members to forego other scholarship opportunities knowing that if the NCAA eventually launched an investigation, Kean would pull a "bait and switch" with the student athletes of now of either playing the college sport they came to Kean to play or receive scholarship money for their education.  Both were no longer offered after the NCAA gave their notice of allegation.

35.    On April 19, 2012, the NCAA found that the defendants violated the rules and were sanctioned for improperly offering Plaintiff and the class members the Dorsey Scholarship, among other things.

36.    Plaintiff and the class she seeks to represent are student athletes who have been disproportionately impacted (73% women) by Kean University and Defendant NCAA's policies and procedures in violation of the New Jersey Law Against Discrimination (LAD).

37.    Through defendants' course of action, plaintiff and the class were entitled to no hearing or due process rights in violation of Article I of the New Jersey State Constitution and they will continue to sustain damages in an amount to be proven at trial.

38.    Accordingly, Plaintiff brings a suit to stop defendants from continuing the discriminatory impact of NCAA's policies and procedures and for monetary losses defendants have caused to plaintiffs and other class members.

39.    The plaintiff and the other similarly situated student athletes were not given time to transfer to another school or to be represented prior to the discipline being imposed.

40.    Kean University and its agents, Chris Morgan, athletic director, and President Farahi admitted the student athletes' did nothing improper to cause this problem.

41.    The Dorsey scholarship is unrelated to sports and, therefore, women student athletes are being disproportionately discriminated against since their scholarship is academic in nature and completely unrelated to the sport they enrolled in Kean to play.

## CLASS ACTION ALLEGATIONS

42.    Plaintiffs bring this action on their own behalf and as a class action pursuant to rules 4:32-1 and 4:32-2(d) of the New Jersey rules of court on behalf of the (following proposed class) or class members:

> Class A:  All female student athletes who
> were prevented from participating in sports
> during the 2011 school year or not paid due
> to NCAA's policies and procedures that have
> a disparate impact on female student
> athletes.

43.    Excluded from the class are the plaintiffs' parents and members of their immediate family.

44.    Numerosity:  The numbers of the class are so numerous and geographically diverse that joinder of all of them is impracticable.  While the exact number and identities of members of the class are unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe and avers that the number of class members required by the rules.

45.    Commonality:  Plaintiffs and class members' claims drive in the common core of salient facts, and share many of the same legal claims.  There are questions of fact or law common to members of the class, which predominate over any questions affecting any individual members.

46.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the other members of the class in that plaintiffs' claims arise from the same course of conduct by defendants toward themselves and members of the class.

47.    <u>Adequacy</u>:  Plaintiffs' will fairly and adequately protect the interest of the class.  Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of other members of the class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the class, and plaintiffs have retained competent counsel experience in litigation of this nature.

48.    Plaintiffs bring this action under Rule 4:32-1 because common questions of law and fact predominate over issues and that are individual to the members of the class.  The proposed class is sufficiently cohesive to warrant class and representative treatment upon information and belief, defendants have the technology and records to provide plaintiffs a plausible class-wide method for proving their case. Certification under Rule 4:32-1 et seq. is also appropriate because a class action is superior to the other available methods for the fair and efficient

adjudication of this action.  Given the small damage amount per class member, the expense of litigating each class members' claim individual would be so cost prohibitive as to deny class members a viable remedy. Plaintiffs envision no unusual difficulty in the management of this action as a class action.

49.     Plaintiffs also bring this action under Rule 4:32-2(d) under the rules of court because defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making final injunctive relief concerning the class as a whole appropriate.  In the absence of appropriate injunctive relief, defendants will continue to operate without consequences for their violations of (1) the discrimination laws, (2) New Jersey Civil Rights Act, (3) New Jersey Constitution, (4) Promissory estoppel, (5) Interference with prospective contract advantage,(6) 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Defendants' uniform conduct towards plaintiffs and other members of the class make certification under the rules appropriate.

## FIRST COUNT

**(Violation of New Jersey Law Against Discrimination)**

50.    Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as set forth at length herein.

51.    Plaintiffs bring this action on their own behalf and as a Class Action pursuant to R. 4:32-1 et seq.

52.     This is an action brought pursuant to the Law Against Discrimination N.J.S.A. 10:5-1 based upon gender discrimination and disparate treatment inflicted upon the plaintiffs, who were female student athletes enrolled with Kean University.

53.    This action is designed not only to vindicate the statutory violations of Plaintiffs' civil rights to be free from discrimination but are further intended to trigger the equitable powers of the Court pursuant to the Law Against Discrimination in order to alter the current system which has been grotesquely defective insofar as it purports to protect female athletes from discrimination that disproportionately effects them or disparate treatment all as set forth more specifically herein.

54.    Plaintiffs commenced enrollment as student athletes with Kean University on or around September 2010.

a. On or around September 1, 2011, Christopher Morgan started work as the Athletic Director of Kean University and withheld information from Plaintiffs about their eligibility that prevented them from transferring to another college or otherwise remedying the problem of participating in college athletics in college.

55.   Christopher Morgan's conduct violates both the LAD and Plaintiffs' rights set forth in Article I of the New Jersey Constitution.

56.   On or around September 30, 2011, shortly after Kean University was put on notice for a violation dealing with off-season activities in Europe, plaintiffs were removed from their respective sports team or forced to forfeit their scholarship money with no hearing or considering any other less severe alternative besides removal from the team or revoking of their scholarship.

57.   Plaintiffs were well aware of the NCAA's custom, habit, or practice of permitting, creating, fomenting, perpetuating, and aiding and abetting the discriminatory policy that is gender based and/or its disproportionate impact on female athletes with Kean University female student athletes against New

Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

58.  The examples of discriminatory and disparate treatment described hereto is just an example of some of the incidents the plaintiffs have been subjected to as Kean University student athletes and further evidence will be produced and brought out during the course of discovery in this matter.

59.  The NCAA ratified the discriminatory policies carried out by Kean University.

60.  The conduct of the defendants herein occurred with actual malice, in willful, wanton, and intentional disregard of plaintiffs' rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., involved upper management, and was especially egregious.

61.  As a direct and proximate result of the events and circumstances involved herein, the plaintiffs have been damaged financially, emotionally and physically.

**WHEREFORE,** plaintiffs demand judgment against the defendants jointly, severally, and in the alternative for compensatory damages, punitive damages, interest,

19

attorney's fees, costs of suit, and such other relief as is just and equitable.

## SECOND COUNT
**(42 U.S.C. § 1983–DELIBERATELY INDIFFERENT TO POLICIES, PRACTICES, CUSTOMS, TRAINING, AND SUPERVISION IN VIOLATION OF THE FOURTEENTH AMENDMENT AND IN VIOLATION OF 42 U.S.C. § 1985)**

62.    Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as if set forth at length herein.

63.    42 U.S.C. § 1983 provides that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress..."

64.    Plaintiffs in this action are citizens of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

65.    The Defendant to this claim at all times relevant hereto was acting under the color of state law.

66.     Plaintiffs had the following clearly established rights at the time of the complained of conduct:

a.   the right to exercise their constitutional rights to be free from discrimination by their state school under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1985.

67.     Defendant knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

68.     The acts or omissions of the Defendant, as described herein, deprived Plaintiffs of their constitutional and statutory rights and caused them other damages.

69.     The acts or omissions of Defendant as described herein, intentionally deprived Plaintiffs of their constitutional and statutory rights and caused them other damages.

70.     Defendant is not entitled to qualified immunity for the complained of conduct.

71.     Defendant is, at all times relevant, policymakers and in that capacity established polices, procedures, customs, and/or practices for the same.

72.     Defendant developed and maintained policies,
procedures, customs, and/or practices exhibiting
deliberate indifference to the constitutional rights
of citizens, which were moving forces behind and
proximately caused the violations of Plaintiffs'
constitutional and federal rights as set forth herein
and in the other claims, resulted from a conscious or
deliberate choice to follow a course of action from
among various available alternatives.

73.     Defendant has created and tolerated an atmosphere
of lawlessness, and have developed and maintained
long-standing, department-wide customs, educational
policies, procedures, customs, practices, and/or
failed to properly educate and/or maintain its
relationship with its member schools in a manner
amounting to deliberate indifference to the
constitutional rights of Plaintiffs and of the public.

74.     In light of the duties and responsibilities of
those employees that are expected to adhere to all
NCAA bylaws, rules and regulations, the need for
specialized education is so obvious, and the
inadequacy of education is so likely to result in the
violation of constitutional and federal rights such as

those described herein that the failure to provide such specialized education is deliberately indifferent to those rights.

75.    The deliberately indifferent education provided by Defendants resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant and were moving forces in the constitutional and federal violation injuries complained of by Plaintiffs.

76.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered emotional injuries, and other damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial.

77.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

78.    Finally, Plaintiffs seek appropriate declaratory and injunctive relief including but not limited to reinstatement pursuant to 42 U.S.C. § 1983 to redress Defendant's above described ongoing deliberate

indifference in polices, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of violating the NCAA rules and regulations, which Defendants have no intention for voluntarily correcting despite obvious need and requests for such correction.

## THIRD COUNT
**(Violation of the Public Policy of the State of New Jersey)**

79.    Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as if set forth at length herein.

80.    In terminating Plaintiffs' freedom of association with the NCAA, Defendant violated the public policy of the State of New Jersey- a public policy well founded in Article I, sections 1 and 6 of the Constitution of the State of New Jersey and in the First Amendment to the United States Constitution, guaranteeing freedom of association.

81.    As a direct and proximate result of Defendant's violations of the public policy of the State of New Jersey, Plaintiffs have suffered the deprivation of precious Constitutional rights, embarrassment, mental

anguish, emotional distress, harm to reputation, and other losses.

### FOURTH COUNT
#### (Promissory Estoppel)

82.   Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as if set forth at length herein.

83.   Plaintiffs bring this action against Defendant to remedy NCAA's unlawful breach of its promise of the Dorsey Scholarship to Plaintiffs, upon which they relied to their detriment.

84.   Plaintiffs allege that Defendant offered them a clear and definite promise of receipt of the Dorsey Scholarship with full knowledge that Plaintiffs reasonable reliance on this promise would entail their surrendering their previous offers from competing colleges.

85.   Defendant then reneged on its oral and written promises of their offer to receive the Dorsey Scholarship and play on their respective sports team thereby causing substantial damages to Plaintiffs as a result of their reasonable reliance on Defendant's offer of the Dorsey Scholarship.

86.     Plaintiffs had a successful athletic career for their high school teams and Defendant had actively solicited Plaintiffs to play for their respective sporting team prior to offering them the Dorsey Scholarship.

87.     Defendant offered Plaintiffs the Dorsey Scholarship and a spot on their respective sports team with the knowledge that Plaintiffs would reasonably rely on its promises of acceptance, and that if Defendant Kean reneged on that offer, plaintiffs would suffer substantial damages.

88.     In reliance on Defendant's promises of acceptance with scholarship, Plaintiffs' had foregone other offers from competing schools.

89.     Defendant had Plaintiffs sign an agreement accepting the Dorsey Scholarship to assure plaintiffs enrollment as being official.

90.     Defendant unlawfully reneged on its promise of the Dorsey Scholarship to plaintiffs and the ability to play on their respective sports team.

91.     As a result of Defendant's reneging on its offer to Plaintiffs, they have suffered and continue to suffer emotional distress and have suffered

irreparable damage to their athletic career and/or scholarship monies as well as any damages associated with any relocation efforts.

### FIFTH COUNT
**(Interference with Prospective Contract advantage with NCAA)**

92.    Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as if set forth at length herein.

93.    Defendant NCAA entered into an agreement with Kean and Kean joined the NCAA as a member to comply with their rules for the sole purpose of playing college sports in Division III before Plaintiffs entered college in New Jersey.

94.    On or before September 30, 2011, Plaintiffs were removed from Kean's respective sports team because of NCAA violations Kean had committed.

95.    Prior to the September 30, 2011 closing date, Plaintiffs were already enrolled in classes for the upcoming semester and were left with no option to transfer or obtain other financial aid.

96.    Defendant intentionally interfered with the student athletes' relationship with Kean University as a third party beneficiary.

97.     Defendant's interference was without justification since there was no precedent to remove a student player from a team for mistakes made by the school and a quick review would show that the NCAA would not give favorable treatment for punishing the student.

98.     Defendant's interference caused the loss of prospective gain of the NCAA membership benefits, or at least that there was a reasonable probability that if the wrongful acts had not occurred, to the Plaintiffs' benefit, or that it was a reasonable probability that Plaintiffs would have obtained the anticipated benefit of playing women's athletics with which defendant is alleged to have interfered.

99.     As a proximate result of the interference with prospective NCAA membership advantage initiated by defendant, plaintiffs have been damaged in an amount to be determined at trial, including but not limited to the cost of attorney's fees.

## SIXTH COUNT

**(VIOLATION OF 42 U.S.C. 1985 CONSPIRING TO DEPRIVE PLAINTIFF OF THEIR FOURTEEN AMENDMENT RIGHT)**

100.    Plaintiffs repeat and reallege all of the foregoing allegations in the complaint as if set forth at length herein.

101.    Defendant formed a conspiracy and did through their conduct and actions conspire for a common design and/or purpose.  Their unlawful purpose and/or lawful purpose to be achieved by unlawful means consisted of denying Plaintiffs equal protection guaranteed by the United States Constitution.  Upon information and belief, defendant engaged and conspired to injure and to harass plaintiff.

102.    Plaintiffs have suffered ordinary and special damages as a result of defendants' conspiracy.  In particular, plaintiffs' reputation has been damaged.

103.    Because of defendant's actions, the Plaintiffs have suffered, and continue to suffer irreparable injury, which cannot be fully compensated by an award of money damages.

**SEVENTH COUNT**

104.    Plaintiff repeats and re-alleges as though fully set forth at length herein, each and every

allegation of the proceeding paragraphs of this complaint.

105. Defendant NCAA deprived Plaintiff of her substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States in violation of New Jersey Civil Rights Act (CRA), NJSA 10:6-1, et. seq.

106. After Plaintiff's scholarship was removed with no hearing or opportunity to be heard, Plaintiff was not provided with any representation when Defendant NCAA and Defendant Kean eliminated a scholarship.

107. At all times material herein, Defendants, and each of them, knew, or reasonably should have known, that the incidents, conduct, acts and failures to act of all other Defendants and/or supervisors, agents and employees as described herein above violated plaintiff's rights under the law.

108. At all times material herein, Defendants, and each of them, knew, or should have known, that the

incidents, conduct, acts, and failures to act
described herein above, would and did proximately
result in emotional distress to plaintiff,
including but not limited to, loss of sleep,
anxiety, tension, depression and humiliation.

109.   As a legal and proximate result of defendants'
conduct, Plaintiff has and will suffer non-
economic damages in the amount to be awarded
according to proof.In light of the defendant
NCAA's willful, knowing, and intentional
harassment of plaintiff, Plaintiff seeks an award
of punitive and exemplary damages in an amount
according to proof.  Defendants, and each of them,
recognize their obligation to not harass plaintiff
and their obligations not to retaliate against
their employees.  Defendants, and each of them,
were aware and conscious of plaintiff's right and
yet, they chose, to ignore and disregard them.
Defendants, through their officers, managing
agents and/or supervisors, authorized, condoned
and ratified the unlawful conduct of all the other
defendants in this action.  Consequently,

plaintiff is entitled to punitive damages for all defendants, and each of them.  Plaintiff is informed, believes and thereon alleges that defendant NCAA held:  (1) Substantial independent authority and judgment over decisions and ultimately determined governmental policies; (2) substantial discretionary authority over decisions that ultimately determined government policy; and (3) substantial authority over significant aspects of defendant NCAA's operations.  As defendant NCAA aided and abetted Defendant NCAA wherein committed acts of oppression and malice, plaintiff is entitled to recover punitive damages from all defendants, and each of them.

110.   As a result of the aforementioned acts and omissions of defendants, plaintiff is entitled to attorneys' fees pursuant to New Jersey Civil Rights Act (CRA), NJSA 10:6-1, et. seq.

111.   **WHEREFORE**, plaintiff on this count Jacklyn Janicky demands judgment as against the defendants NCAA for compensatory damages, lost wages, benefits, and other remuneration, punitive damages, attorney's fees and costs and such other

relief as a court or jury deemed just and appropriate pursuant to New Jersey Civil Rights Act (CRA), NJSA 10:6-1, et. seq.

**EIGHTH COUNT**

**(Violation of the Public Policy of the State of New Jersey AGAINST NCAA ONLY)**

112.   Plaintiff repeats and re-alleges all of the foregoing allegations in the complaint as if set forth at length herein.

113.   In terminating Plaintiff's freedom of association with Kean University, Defendant violated the public policy of the State of New Jersey- a public policy well founded in Article I, sections 1 and 6 of the Constitution of the State of New Jersey and in the First Amendment to the United States Constitution, guaranteeing freedom of association.

114.   As a direct and proximate result of Defendant's violations of the public policy of the State of New Jersey, Plaintiff has suffered the deprivation of precious Constitutional rights, embarrassment, mental anguish, emotional distress, harm to reputation, and other losses.

**RESPONDEAT SUPERIOR**

115.    At the time of the incident, Defendant DOES are
the employees, agents, and/or servants of Defendand
NCAA.  Defendants does were acting within the course
and scope of their employment with said Defendant at
the time of the incident made the basis of this
lawsuit.  As such, said Defendant is responsible for
the conduct of Defendants does under the doctrine of
respondeat superior due to the master-servant
relationship which existed at the time of the incident
made the basis of this lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against
Defendants as follows:

A.    Certification of the action as a Class Action
pursuant to the Federal Rules of Civil
Procedure, and appointment of Plaintiffs as
the Class Representative and their counsel of
record as Class Counsel;

B.    A declaration by this Court that Defendants'
conduct constituted a conspiracy, and that
they are each jointly and severally liable for

the conduct of or damage inflicted by any
other defendant;

C.   Actual damages, statutory damages, punitive
damages, and such other relief as provided by
the statutes cited herein;

D.   Disorgement of all profits earned by
Defendants from the accomplishments of
Plaintiffs and class members;

E.   Prejudgment and post-judgment interest on such
monetary relief;

F.   Declaring null, void and/or unenforceable any
contractual provisions or NCAA bylaws and
policies purporting to limit the right of
Plaintiffs and class members to receive
compensation for their injuries;

G.   The costs of bringing this suit, including
reasonable attorneys' fees; and

H.   All other relief to which Plaintiffs and class
members may be entitled at law or in equity.

**JURY TRIAL DEMANDED**

116.    Plaintiffs demand a trial by jury on all

issues triable of right by jury.

RESPECTFULLY SUBMITTED this 21st day of April, 2014.

**TIMOTHY J. McILWAIN,**

**ATTORNEY AT LAW, LLC**


/s/ Timothy J. McIlwain

BY:_____

TIMOTHY J. McILWAIN
89 River Street #1538
Hoboken, NJ 07030
Telephone: (877) 375-9599
Facsimile: (609) 450-7017
Attorney@McilwainLaw.com
Attorney for Plaintiffs