<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**SHANNON PEDERSEN, et al.,**

    *Plaintiffs,*

v.

**NATIONAL COLLEGIATE**
**ATHLETICS ASSOCIATION, et al.,**

    *Defendants.*

**Civil Action No. 14-2544**

**OPINION**

---

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court by way of Defendants National Collegiate Athletics Association ("NCAA") and Ameen Najjar's (collectively, "Defendants") motion to dismiss Plaintiffs Shannon Pedersen, Jaclyn Janicky, and Emily Cristaldi's (collectively, "Plaintiffs") Second Amended Complaint ("SAC"). Dkt. No. 45.[1] The Court has considered Defendants' motion without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth herein, Defendants' motion is **GRANTED**.

**I.  BACKGROUND**

This action asserts claims for gender discrimination arising out of penalties imposed on several female NCAA athletes at Kean University. For the purposes of this motion, the following facts are taken as true.

---

[1] On November 23, 2015, Defendants Kean University and Dawood Farahi joined in the motion to dismiss. See Dkt. No. 72. Although Plaintiffs filed three versions of the SAC, see Dkt. Nos. 40-42, the Court will deem the last version the active pleading.

1

The NCAA is an unincorporated association that acts as the governing body of many college level athletic programs. SAC at 4 ¶ 15, Dkt. No. 42.[2] Defendant Kean University, a public university in New Jersey, is one of over 1,200 member institutions that must adhere to the NCAA's bylaws and policies. Id. at 4 ¶¶ 15-16. One particular policy, according to Plaintiffs, "requires a limit on financial aid opportunities for anyone with a grade point average above 3.0." Id. at 2 ¶ 2.

Plaintiffs are current and former Kean University female athletes. Id. at 4 ¶¶ 12-14. Ms. Pedersen and Ms. Janicky currently play for the women's soccer team. Id. Ms. Cristaldi is a former member of the women's basketball team. Id. They enrolled in September 2010, where they all received the Dorsey Scholarship. Id. at 27 ¶ 26, 30 ¶ 42, 34 ¶¶ 62-68.[3] They chose Kean University over other schools that offered scholarships and athletic opportunities and signed agreements with NCAA and the University permitting them to play collegiate sports until 2015. Id. at 32 ¶ 50, 33 ¶ 61. While on the teams, Plaintiffs maintained GPAs above 3.2. Id. at 2 ¶ 3.

In 2011, Michele Sharp—the University's women's basketball coach, assistant athletic director, and Senior Women's Administrator—was charged with committing certain NCAA violations that impacted Plaintiffs' scholarship status. Id. at 9 ¶ 14, 10 ¶ 17. Although not clear from the SAC, it appears that, in January 2011, certain basketball players played in a game for which they were ineligible (for unspecified reasons, but possibly involving "violations dealing

---

[2] Due to inconsistent paragraph numbering in the SAC, the Court will identify both the page and paragraph in its citations to the document.

[3] It is unclear from the SAC if the scholarship contained a minimum GPA requirement. The SAC states, "Prior to September 28, 2011, eight (8) female students received financial aid totaling approximately $192,000 per year from NCAA membership school Kean University. In order to qualify for this financial aid the eight (8) female students were required to and succeeded in maintaining a grade point average (GPA) of 3.0 or higher." Id. 9 ¶¶ 12-13. But the SAC does not indicate if this financial aid was the Dorsey Scholarship or if these unnamed female students include Mss. Pedersen, Janicky, or Cristaldi.

2

with off-season activities in Europe").[4]  See id. at 9-10 ¶ 16, 28 ¶ 28.  Ms. Sharp allegedly played these players at the urging of Defendants Mr. Hedden, the University's Athletic Director, and Mr. Najjar, an NCAA representative.  Id. at 5 ¶¶ 18-19, 9-10 ¶ 16.

An expedited trial commenced to review Ms. Sharpe's conduct and the players' participation in that game.  Id. at 12 ¶ 21.  In September 2011, the NCAA levied penalties against the players that resulted in, amongst other things, a choice between either keeping their scholarship or giving up their position on the teams.  Id. at 11 ¶ 18, 28 ¶ 28.  The players were not given the opportunity to obtain representation or participate in any hearing.  Id. at 21 ¶ 12.  The penalty was imposed too late for Plaintiffs to transfer to another school or otherwise attempt to remedy the issue.  Id. at 27-28 ¶ 26.  As a result, Ms. Pedersen and Ms. Janicky forfeited their scholarships in order to continue playing, but Ms. Cristaldi chose to leave the team and the University.  Id. at 14 ¶ 33.

Plaintiffs allege that the penalty was instituted even though other less severe alternatives existed.  Id. at 28 ¶ 28.  They also maintain that the decision was part of NCAA and the University's policy and practice of treating female athletes worse than male athletes.  See id. at 28 ¶¶ 29-30.  In comparison, Plaintiffs reference incidents at other universities involving men's sports teams where players were not penalized.  Id. at 10-12 ¶¶ 18-20.

In August 2014, the University again denied Plaintiffs payment of funds due to their continued participation in athletics.  Id. at 13 ¶ 25.

Plaintiffs filed the initial Complaint on behalf of themselves and other similarly situated in April 2014.  Dkt. No. 1.  Following several amendments, Plaintiffs filed the instant SAC in March

---

[4] It appears from the initial Complaint, Dkt. No. 1, that the issues also stemmed from the University offering more Dorsey Scholarships than was permissible under NCAA rules.  Compl. ¶¶ 21-24.  The SAC, however, makes no mention of this.

2015. Dkt. No. 42. The SAC asserts eleven causes of action: (1) Title IX violations; (2) federal Racketeer Influenced and Corrupt Organization Act ("RICO") violations; (3) New Jersey RICO violations; (4) equal protection violations under 42 U.S.C. § 1983; (5) conspiracy under 42 U.S.C. § 1985; (6) New Jersey Law Against Discrimination ("NJ LAD") violations; (7) interference with prospective contract advantage; (8) negligence; (9) breach of contract; (10) breach of the implied covenant of good faith and fair dealing; and (11) promissory estoppel. Defendants NCAA and Mr. Najjar filed their motion to dismiss in April 2015.

## II. STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

Defendants move to dismiss the SAC on statute of limitations grounds and as inadequately pled. The Court will address each in turn.

**A. Dismissal on Statute of Limitations Grounds (Counts 1, 4, 5, 6, 8)**

Defendants first move to dismiss several of Plaintiffs' claims as barred by the statute of limitations. Specifically, they argue that the two-year statute of limitations bars Plaintiffs' claims under Title IX (Count 1), §§ 1983 and 1985 (Counts 4 and 5), NJ LAD (Count 6), and negligence (Count 8). The Court agrees.

These claims are all subject to a two-year statute of limitations. Because Title IX, § 1983, § 1985, and NJ LAD have no statute of limitations, the claims must be brought pursuant to New Jersey's two-year statute of limitations for personal injury torts. Shine v. Bayonne Bd. of Educ., No. 14-4184, 2015 WL 5559842, at *3 (3d Cir. Sept. 22, 2015) (Title IX and § 1983); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (§ 1985); Ali v. Rutgers, 166 N.J. 280, 285 (2000) (NJ LAD). The negligence claim, accordingly, is also subject to a two-year limitation period. N.J. Stat. Ann. § 2A:14-2(a).

With the exception of NJ LAD, the limitations period for these claims "begins to run[] when plaintiff knew or should have known of the injury upon which its action is based." Shine, 2015 WL 5559842, at * 3 (quoting Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009)). Under NJ LAD, however, where the alleged conduct is a discrete act of discrimination, the period begins to run "on the day [the act] happens." Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010).

Here, all five claims revolve around Defendants' revocation of Plaintiffs' scholarships in September 2011. Plaintiffs knew about the decision because they were asked that same month to decide whether to play or keep their scholarship. As alleged in paragraph 28 of the SAC, "[o]n or around September 30, 2011, shortly after Kean University was put on notice for a violation dealing with off-season activities in Europe, plaintiffs were removed from their respective sports team or forced to forfeit their scholarship money with no hearing or considering any other less severe

alternative besides removal from the team or revoking of their scholarship." SAC 28 ¶ 28. These claims therefore accrued on or around September 30, 2011.[5] Because this action was instituted in April 2014, the claims are time-barred.

Plaintiffs argue first that the "complaint was filed within two years of the NCAA's April 19, 2014 letter with sanctions." Opp'n Br. at 26. But the SAC makes no mention of any such letter or sanctions. It appears that Plaintiff is attempting to inserts facts into the brief that are not averred in the SAC. The Court will not consider allegations not stated in the SAC. Plaintiffs may not "amend" a complaint through statements made in an opposition brief. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

Alternatively, Plaintiffs argue that the continuing violations doctrine should apply to Defendants' continued refusal to grant Plaintiffs their scholarships until as recently as January 2014. The Court disagrees.

The continuing violations doctrine "allow[s] for the aggregation of acts, each of which, in itself, might not have alerted the [plaintiff] of the existence of a claim, but which together show a pattern of discrimination." Alexander, 204 N.J. at 230 (internal citation omitted). However, "the doctrine does not permit [] the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Id. Nor does it permit consideration of acts within the statutory period that are sporadic in nature or simply the effects of the original ones. See J.H. Grp., LLC. v. Royal Rolling Chairs, LLC., No. 11-1595, 2012 WL 1044498, at *5 (D.N.J. Mar. 28, 2012).

---

[5] Plaintiffs allege that they "did not discover that the NCAA and Kean University staff had breached their duty in complying with Title IX until October 7, 2011 . . . ." SAC 31 ¶ 47. But the date of accrual is when the Plaintiffs knows or should know that the injury occurred, not when they realize it gives rise to a legally cognizable claim. Nonetheless, even if the accrual date was in October 2011, it would still be more than two years before the case was filed.

Here, Defendants' continued refusal to deny Plaintiffs a scholarship is simply a residual effect of the original scholarship revocation. Plaintiffs, moreover, were alerted about the existence of the claim when the denial occurred in September 2011, and no pattern of discrimination was necessary to shed light on Defendants' allegedly discriminatory conduct. The continuing violations doctrine therefore has no application in this case.

Accordingly, Counts 1, 4, 5, 6, and 8 are dismissed as time-barred and dismissed with prejudice.

### B. Dismissal for failure to state a prima facie claim (Counts 2 and 3)

Plaintiffs assert violations under both federal and New Jersey RICO statutes. 18 U.S.C. § 1962(c); N.J. Stat. Ann. § 2C:41-1.2. Essentially, they offer three theories. First, Mr. Hedden conspired with a group of subordinates, the NCAA, and Mr. Najjar to ensure that Plaintiffs suffered a maximum penalty. See SAC at 17 ¶¶ 46-47, 20 ¶¶ 65-67. Second, the University, through its agents, took inconsistent legal positions about Coach Sharp during an NCAA investigation and a state court case involving Mr. Hedden. See id. at 17-19 ¶¶ 49-56, 60 and 20-22 ¶¶ 68-77. They allege that University knew their statements were inconsistent and amounted to perjury in the state court case, and therefore constituted a RICO violation. See id. at 18 ¶¶ 54-58, 22 ¶¶ 76-77. Third, as the SAC reads, the "NCAA's marketing materials emphasize 'student first, athlete second,' however, their Division III policy that students applying for financial aid are prohibited from disclosing their athletic interest or past activity directly negates that assertion." Id. at 18 ¶ 59, 22 ¶78.

Because Plaintiffs' federal and New Jersey RICO claims parallel each other, and because the two RICO statutes are intended to be coextensive, the Court will analyze the claims

7

concurrently.  See In re Schering–Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 245 (3d Cir. 2012).

Defendants argue that Plaintiffs fail to meet several elements of both RICO statutes.  The Court agrees.  As explained below, each of Plaintiffs' three theories fail to meet several elements.

"Establishing liability under § 1962(c) of the RICO statute requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to business or property." Reyes v. Netdeposit, LLC, 802 F.3d 469, 483 (3d Cir. 2015).  To prove a violation under N.J.S.A. § 2C:41-2(c), Plaintiffs must show "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity."  See N.J.S.A. § 2C:41-2; State v. Ball, 141 N.J. 142, 181 (1995); Marina Dist. Dev. Co., LLC v. Ivey, 93 F. Supp. 3d 327, 340 (D.N.J. 2015).

"The [federal] RICO statute does not specifically define the outer boundaries of the 'enterprise' concept but states that the term 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  Boyle v. United States, 556 U.S. 938, 944 (2009) (citations 18 U.S.C. § 1961(4)).  "This enumeration of included enterprises is obviously broad, encompassing 'any . . . group of individuals associated in fact.'"  Id. (citations omitted).  Plaintiffs must also allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n, 14 F. Supp. 3d 591, 613 (D.N.J. 2014) reconsideration granted in part, No. 13-1586, 2014 WL 2999065 (D.N.J. July 2, 2014) (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158,

161 (2001)). Under the state statute, an "enterprise" includes "any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities." Franklin Med. Associates v. Newark Pub. Sch., 362 N.J. Super. 494, 513 (App. Div. 2003) (quoting N.J.S.A. 2C:41-1(c)).

Plaintiffs' second and third theories plainly do not allege an enterprise. The second theory merely alleges that the University "and its actors" made certain statements. Under the federal statute, this does not reference two distinct parties. Under the state statute, the threadbare allegation that "actors" were involved is not a plausible allegation of an enterprise. The third theory, which points to the NCAA's marketing material, suffers from the same flaws.

Second, under all three theories, Plaintiffs do not allege a pattern of racketeering activity. Under the federal statute, "[r]acketeering activity" is defined to include a list of state and federal offenses, 18 U.S.C. § 1961(1), one of which is the federal mail fraud statute, 18 U.S.C. § 1341. In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig., 795 F.3d 380, 408 (3d Cir. 2015); 18 U.S.C. § 1961(1)(B). The state statute defines it to include "any conduct defined as 'racketeering activity' under Title 18, U.S.C. 1961(1)(A), (B) and (D)." N.J. Stat. Ann. § 2C:41-1a(2).

Here, Plaintiffs allege that Defendants' conduct "constitute[s] mail fraud in violation of § 1341, and as such constitutes a pattern of racketeering activity." SAC 19 ¶ 60, 22 ¶ 79. Where, as here, the plaintiff asserts fraud-related predicate acts, the pleading must meet the standard of particularity set forth under Rule 9(b). Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 312 (D.N.J. 2005) aff'd 691 F.3d 527 (3d Cir. 2012). Plaintiffs have failed to do so. They do not allege under any of the three theories how Defendants engaged in mail fraud (or even used the mail at

all).[6]  And given that Plaintiffs have not sufficiently alleged a single instance of racketeering activity, Plaintiffs have also not pled a "pattern" of activity.  Cf. Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995) (collecting cases where a pattern of racketeering activity was established).

Third, under all three theories, Plaintiffs have not pled that the conduct "affected trade or commerce."  Under the New Jersey statute, a plaintiff must allege that the "defendant was employed by or associated with a racketeering enterprise which engaged in trade or commerce in New Jersey or affected trade or commerce in New Jersey."  State v. Casilla, 362 N.J. Super. 554, 565 (App. Div. 2003).  The SAC does not do so, and Plaintiffs do not address the issue in their Opposition Brief.

Finally, under all three theories, Plaintiffs did not allege an injury to business or property proximately caused by Defendants' conduct.  "A civil RICO plaintiff is also required to plead causation. '[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a but for' cause of his injury, but was the proximate cause as well.'"  Parness v. Christie, No. 15-3505, 2015 WL 4997430, at *7 (D.N.J. Aug. 19, 2015).  Here, Plaintiff has not shown that either the University's statements at Coach Sharp's trial or the NCAA's marketing material are in any way causally related to Plaintiffs' loss of financial aid.  And while the allegation that certain Defendants colluded to impose severe penalties on Plaintiffs may satisfy the causation question, Plaintiffs failure to meet the above-mentioned elements under this theory renders the question purely academic.

Accordingly, Counts 2 and 3 are dismissed.  Dismissal of these claims will be with prejudice because further amendment would be futile.  Allstate New Jersey Ins. Co. v. Summit

---

[6] The SAC's only mention of mail is this: "Defendants' false statements in testimony and promotion contain materially false statements using interstate commerce, including the United States mail, constitute mail fraud in violation of 18 U.S.C. § 1341 . . . ."  SAC ¶¶ 60, 79.

10

Pharmacy, Inc., No. 13-5809, 2014 WL 1767528, at *12 (D.N.J. May 2, 2014). As made plain above, Plaintiffs' state and federal RICO allegations are woefully inadequate. Most of the allegations consist only of threadbare recitals of RICO elements and conclusory statements. Those that do assert genuine factual allegations are either largely irrelevant to these Plaintiffs or indecipherable. Finally, Plaintiffs have decided not to defend most of these allegations in the brief. The Court therefore dismisses Counts 2 and 3 with prejudice.

### C. Remaining State Law Claims (Counts 7, 9, 10, 11)

Because all of Plaintiffs' federal claims have been dismissed, Plaintiffs' remaining four claims—interference with contractual advantage, breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel—all sound in state law. Plaintiffs assert that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. SAC ¶ 10. While Defendants argue for dismissal of these claims on the merits, the Court will instead dismiss them on jurisdictional grounds.[7]

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). Additionally, the federal court should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties." United Mine Workers v. Gibbs, 383 U.S. 715,

---

[7] There is no diversity of citizenship between Plaintiffs and Defendants because Plaintiffs Pedersen and Janicky are New Jersey residents and Defendant Kean University is a State University located in Union County, New Jersey. SAC ¶¶ 12-13, 16. Jurisdiction therefore cannot exist under 42 U.S.C. § 1332.

726 (1966). "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." Walls v. Dr. Blackwell, No. 05-4391, 2005 WL 2347124, at *3 (D.N.J. Sept. 22, 2005) (citing Gibbs, 383 U.S. at 726).

The Court finds it appropriate to decline jurisdiction over Plaintiff's remaining state law claims. The remaining claims involve interpretation of wholly state-based claims sounding in tort and contract. Additionally, as this case is still at an early stage in the litigation, "dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties." Freund v. Florio, 795 F.Supp. 702, 711 (D.N.J. 1992); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

Accordingly, the Court will dismiss Plaintiff's state law claims in accordance with 28 U.S.C. § 1367(c)(1). These counts are dismissed without prejudice.

### IV.  CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss, Dkt. No. 45, is **GRANTED**. An appropriate Order accompanies this Opinion.

**Dated: November 24, 2015**

/s Madeline Cox Arleo_____
**Hon. Madeline Cox Arleo**
**United States District Judge**